**[Cite as *State v. N.C.*, 2024-Ohio-4739.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. Nos.    30949 |
| | | 30950 |
|     Appellant | | |
| | | |
|     v. | | |
| | | APPEAL FROM JUDGMENT |
| N. C. | | ENTERED IN THE |
| | | COURT OF COMMON PLEAS |
|     Appellee | | COUNTY OF SUMMIT, OHIO |
| | | CASE Nos.    CR 10 07 1951 (B) |
| | | CR 10 08 2244 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2024

---

FLAGG LANZINGER, Judge.

**{¶1}** The State of Ohio appeals the judgment of the Summit County Court of Common Pleas, granting N.C.'s applications to seal records. We affirm.

I.

**{¶2}** In this consolidated appeal, the State appeals the trial court's granting of N.C.'s three applications to seal records. In appeal No. 29775, this Court previously summarized the procedural history of N.C.'s first two applications to seal records as follows:

> In September of 2010, N.C. was indicted on ten counts of pandering sexually oriented matter involving a minor. Following the denial of his motion to suppress, the matter proceeded to a bench trial at which N.C. was convicted on all ten counts. In a split decision, this Court affirmed those convictions on appeal. . . . The Supreme Court, also in a split decision, reversed this Court's decision, holding that the search warrant in this case was invalid and that the evidence obtained in executing the warrant must be suppressed. . . . Upon remand, the trial court vacated N.C.'s convictions and the case was dismissed on July 31, 2015.

N.C. filed a motion to seal his record on November 8, 2016, which the trial court denied without a hearing, despite the language of R.C. 2953.52(B)(1) (mandating that the court shall set a date for a hearing upon the filing of an application to seal the record). N.C. filed a second motion to seal his record on November 30, 2016, and the trial court, agreeing that the first motion to seal had been improperly denied without a hearing, set a hearing date in accordance with R.C. 2953.52(B)(1). . . . [A] sealing hearing was finally held on October 1, 2018. Following the hearing, the trial court took the matter under advisement. In a journal entry filed on October 16, 2018, the court denied N.C.'s motion to seal his records. In its entry, the court erroneously stated that the only real issue is "whether [N.C.'s] interests in having the official records of this case sealed outweigh the interests of the State in having them remain unsealed."

N.C. appealed, and this Court reversed and remanded the matter for further proceedings, concluding that the trial court applied an incorrect standard, under R.C. 2953.52(B)(4), when weighing N.C.'s interests in having the records sealed against any legitimate needs of the government to maintain those records. . . . Upon remand, the parties agreed to forego a new hearing, and the trial court instead reviewed the original transcript of the sealing hearing, the parties' respective briefs, this Court's decision in *N.C. II*, and the relevant law. The court then issued a journal entry on June 8, 2020, denying N.C.'s motion to seal the record.

*State v. N.C.*, 2022-Ohio-781, ¶ 2-4 (9th Dist.).

{¶3}  N.C. again appealed. This Court again reversed and remanded the matter, concluding that "the trial court abused its discretion in weighing the parties' interests and in determining N.C. had not demonstrated that his interests in having his records sealed outweighed or were equal to the State's interests, if any, in keeping the records unsealed." *Id.* at ¶ 16.

{¶4}  Appeal No. 30950 relates to N.C.'s third application to seal. While N.C.'s prior appeal was pending, he became statutorily eligible to apply to seal the record of a separate criminal conviction.  In 2016, N.C. was convicted of retaliation. On March 24, 2021, N.C. filed an application to seal the record of that criminal conviction.

{¶5}  On November 13, 2023, the trial court granted N.C.'s applications to seal. The State appealed raising one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN GRANTING THE APPLICATIONS TO SEAL.**

{¶6} The State argues that the trial court abused its discretion by granting N.C.'s sealing applications. The State asserts that the trial court's decision was arbitrary because it failed to articulate the basis for its decision in its order. We disagree.

{¶7} This Court reviews a trial court's judgment regarding sealing criminal files under an abuse of discretion standard unless the dispute involves a purely legal question. *State v. A.V.*, 2020-Ohio-3519, ¶ 8 (9th Dist.). More than an error in law or judgment, an abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**Appeal No. 30950 – Applications to Seal Records Resulting in Dismissal.**

{¶8} When considering an application to seal a record resulting in a criminal dismissal, R.C. 2953.52[1] requires the trial court to hold a hearing to (1) determine whether the applicant was found not guilty; (2) determine whether criminal proceedings are pending against the applicant; (3) consider any objections of the prosecutor; and (4) weigh the interest of the applicant in sealing the records against the legitimate interest, if any, of the government in maintaining the record. Former R.C. 2953.52(B). The parties agree that at the time N.C. filed his applications, (1) the

---

[1] R.C. 2953.52 was amended by the Ohio Legislature after the trial court granted N.C.'s applications to seal.

indictments against him had been dismissed without prejudice, and (2) no criminal proceedings were pending against N.C.

{¶9} The trial court held a hearing to address N.C.'s application to seal. At the hearing, N.C. testified that the dismissed pandering case has "definitely hindered [his] life" by frustrating his attempts to obtain employment. He testified that the pandering charges have a stigma, regardless of his case having been dismissed. According to N.C., a potential employer learned of the pandering case and "basically . . . told [him] to get the F out of his office." N.C. also testified that he would be graduating from college by the end of the year with three bachelor's degrees and a 3.9 grade point average. According to N.C., he intended to apply into a Master's program, but his college counselor informed him that his pandering case would come up in background checks and hearings would be held to determine if he would be accepted. N.C. testified that the counselor advised him that he "need[s] to get this sealed" before graduation. N.C. also testified that, in 2010, his former college "[threw him] out for this [case]" and "wouldn't let [him] back in."

{¶10} The State objected to N.C.'s sealing applications both in writing and at the hearing. In its written objection, the State argued that the government has a substantial interest in preserving the public's safety by maintaining N.C.'s records and in providing the police with all relevant information in the event they interact with N.C. in the future. At the hearing, the prosecutor contended that N.C.'s interests in having the records sealed were not outweighed by the State's legitimate need to maintain the records. He explained that the "awful, awful child pornography" found on N.C.'s computer was "the worst [he has] ever seen[,]" involving "orgies with little boys and men[,]" and that the State has an interest in keeping these types of offenses "available so that [it] can go back and look and see who this person is."

{¶11} In its order granting N.C.'s applications to seal, the trial court stated that it reviewed

the application and objection filed and the testimony presented at the October 1, 2018 hearing. In its order, the trial court indicated that it had "considered the objections made by the prosecutor" and "weighed the interests of [N.C.] in having the record of this case sealed against the interests of the State in having the record not sealed." The trial court concluded that "the interest of [N.C.] in having the record sealed outweighs the interest of the State in not having the record sealed." While the State argues that the trial court did not sufficiently elaborate on its reasoning, the record shows that the court evaluated the statutory factors outlined in former R.C. 2953.52. Contrary to the State's assertion, the trial court was not required to provide a detailed explanation when granting N.C.'s sealing applications. *See State v. Stringer,* 2009-Ohio-909, ¶ 5 (9th Dist.). Instead, the court needed only to "provide sufficient information in its decision to enable a reviewing court to ascertain whether it [had] considered *all matters* that must be evaluated and whether it [had] applied the correct tests under the statute." (Emphasis in original.) *N.C.,* 2022-Ohio-781, at ¶ 11 (9th Dist.), citing *State v. Smith,* 2014-Ohio-2232, ¶ 16 (9th Dist.). The trial court did not act unreasonably, arbitrarily, or unconscionably in granting N.C.'s sealing applications.

**Appeal No. 30949 – Application to Seal Record of Criminal Conviction.**

{¶12}   When considering an application to seal a criminal file that resulted in a criminal conviction, R.C. 2953.32  requires a trial court to (1) decide whether the applicant is eligible to have the record of their conviction sealed, (2) determine whether criminal proceedings are pending against the applicant (3) consider any objections of the prosecutor; and (4) weigh the interest of the applicant in sealing the records against the legitimate interest, if any, of the government in maintaining the record. Former R.C. 2953.32(B). The parties agree that at the time N.C. filed his applications, (1) N.C. was statutorily eligible to have the record of his conviction sealed, and (2) no criminal proceedings were pending against N.C.

{¶13} The trial court held a hearing to address N.C.'s application to seal his conviction. At the hearing, N.C. testified that his conviction had caused him to have "a hard time over the past seven years getting a job." N.C. testified that he was eventually able to get a job because his uncle hired him and did not perform a background check. N.C. testified that he lost that job because of the pandemic. N.C. testified that he graduated from college with a 3.95 grade point average. According to N.C., he intended to apply for master's programs or law school, but his college counselor advised him that he needed to get his conviction sealed. N.C. also testified that, he had "grown from this case[,]" and that he had "not been in trouble with the law, save a couple traffic tickets, since [he was] released from prison." N.C. testified that he wanted his conviction sealed because he was "trying to better [his] life."

{¶14} The State objected to N.C.'s sealing applications both in writing and at the hearing. In its written objection, the State argued that it "has a substantial interest in preserving the public safety by maintain[ing] defendant's record and providing the police with all relevant information in the event that they are required to interact with [N.C] in the future." The State also asserted that N.C. was "not sufficiently rehabilitated. He has not expressed remorse for his actions in this case and has had several traffic tickets issued since his release from prison."

{¶15} In its order granting N.C.'s sealing applications, the trial court addressed the State's objections, particularly the prosecutor's assertion that N.C. had not expressed remorse for his conduct and was therefore not rehabilitated. The trial court found that, "the fact that remorse may not have expressed been does not bar a court from finding that an applicant has been rehabilitated." The trial court also addressed the prosecutor's objection regarding traffic tickets by noting that "the fact that an applicant has had traffic tickets issued to him/her does not mean that the applicant has not been rehabilitated." The trial court concluded that "[t]he Court has considered the

objections filed by the State and has weighed the interest of [N.C.] in having his conviction sealed against the interest of the State in not having the conviction sealed." The trial court was not required to provide detailed reasoning when granting the applications. *Stringer*, 2009-Ohio-909, at ¶ 5 (9th Dist.). The trial court only needed to "provide sufficient information in its decision to enable a reviewing court to ascertain whether it [had] considered *all matters* that must be evaluated and whether it [had] applied the correct tests under the statute." (Emphasis in original.) *N.C.*, 2022-Ohio-781, at ¶ 11 (9th Dist.).

{¶16}  In its order, the trial court provided sufficient information to enable this Court to ascertain that it had considered all matters that must be evaluated pertaining to R.C. 2953.32. "A trial court has a significant amount of discretion in determining whether a petitioner has been rehabilitated satisfactorily and whether [sealing] is consistent with the public interest." *Smith*, 2014-Ohio-2232, at ¶ 16 (9th Dist.), quoting *State v. Cuttiford*, 1998 WL 78695, *3 (9th Dist. Feb. 11, 1998). The trial court did not act unreasonably, arbitrarily, or unconscionably in granting N.C.'s sealing applications.

{¶17}  The State's sole assignment of error is overruled.

III.

{¶18}  The State's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
CONCURS.

SUTTON, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

N. C., pro se, Appellee.